IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALICIA HERNANDEZ,<br>　　　　　　Plaintiff,<br>　　vs.<br><br>LAMBOY FURNITURE, INC.,<br>　　　　and<br>LAMBOY HOUSING DEVELOPMENT CO.,<br>　　　　and<br>NATIONAL TENANT NETWORK,<br>　　　　and<br>CANDELARIO LAMBOY,<br>　　　　　　Defendants. | CIVIL ACTION<br><br><br><br><br>NO. 07-CV-0240(JD) |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AS TO LIABILITY ONLY**

Plaintiff, Alicia Hernandez, by and through her undersigned counsel, pursuant to Federal Rule of Civil Procedure 56(a), hereby respectfully submits this Motion for Summary Judgment as to Liability Only against Defendants Candelario Lamboy, Lamboy Furniture, Inc. and National Tenant Network.

**I.　　INTRODUCTION**

This case arises from Defendants Candelario Lamboy ("Lamboy") and Lamboy Furniture, Inc.'s ("Lamboy Furniture") having obtained and used Plaintiff's credit report without a permissible purpose in violation of the Fair Credit Reporting Act ("FCRA") § 1681b, and Defendant National Tenant Network's ("NTN") failure to follow reasonable procedures, as mandated by 15 U.S.C. § 1681e(a), to ensure that its subscribers have a permissible purpose when requesting a consumer's credit report.

During the deposition of Lamboy, he admitted several times that neither he nor Lamboy Furniture had any permissible purpose when he personally requested Plaintiff's credit report

from NTN on April 18, 2006.[1]  Moreover, Lamboy also admitted to impermissibly giving Plaintiff's credit report to a third party, Jose Diaz, with whom Plaintiff had had several commercial disputes in the past.

During the deposition of NTN's 30(b)(6) designee, Lawrence Abramovitz ("Abramovitz"), he admitted that NTN relied solely upon a blanket certification of Lamboy Furniture, signed on May 5, 1998, stating that Lamboy Furniture would only request consumer reports for a permissible purpose.  Abramovitz also admitted that no effort was ever made from May 5, 1998, until April 18, 2006, a period of almost eight (8) years, to either update and/or confirm Lamboy Furniture's original certification, as the Act requires.  As more particularly set forth below, Abramovitz's admissions establish facts upon which no reasonable fact-finder could fail to conclude that NTN violated its obligations under 15 U.S.C. § 1681e(a).

Because Lamboy's admissions entitle Plaintiff to a judgment in her favor as a matter of law as to liability only against Defendants Lamboy and Lamboy Furniture for negligent and willful violation of § 1681b, and because Abramovitz's admissions entitle Plaintiff to summary judgment as to liability only with respect to NTN's negligent violation of § 1681e(a), Plaintiff's Motion for Summary Judgment as to Liability Only should be granted.

---

[1]   Given Lamboy's admissions, Plaintiff requested that Defendants Lamboy and Lamboy Furniture, Inc. stipulate to entry of a judgment against them for liability only as to their negligent violation of 15 U.S.C. § 1681b, thereby saving the time and expense of filing a Motion for Summary Judgment against them on this issue.  However, counsel for Defendants Lamboy and Lamboy Furniture refused to stipulate to an entry of judgment as to liability only with respect to Defendants' negligent violation of § 1681b unless Plaintiff also dismissed all claims for said Defendants' willful violation thereof.  This Plaintiff could not do, and consequently the instant Motion against Lamboy and Lamboy Furniture is necessary.

## II. UNDISPUTED MATERIAL FACTS

### A. Lamboy and Lamboy Furniture

1. Lamboy Furniture is a retail furniture business located at 2846 North Fifth Street, Philadelphia, Pennsylvania. (Deposition transcript of Candelario Lamboy, hereinafter referred to as Lamboy Dep., 13:9-12, a true copy of which is attached hereto as Exhibit "A").

2. Candelario Lamboy was the only person at Lamboy Furniture authorized to pull a consumer's credit report. (Id. 13:18-23).

3. Lamboy understood that the only reason he could request a credit report was to make a decision regarding the extension of credit. (Id. 19:2-10).

4. It was Lamboy's understanding that he could request a consumer report for "no other reason." (Id. 19:18-21).

5. Jose Diaz was never an employee or agent of Lamboy Furniture or Lamboy Housing Development, Inc. (Id. 29:15-24).

6. Lamboy Furniture owned commercial property which it sometimes rented, and therefore it would sometimes obtain tenant reports. (Id. 33:21-34:15).

7. Lamboy Furniture had no written policies or procedures in place to insure the confidentiality of consumer credit reports. (Id. 36:1-10).

8. Candelario Lamboy signed a Subscription Agreement with NTN on May 5, 1998. (Id. 52:9-20). A true copy of said Subscription Agreement is attached hereto as Exhibit "B."

9. Neither Lamboy nor Lamboy Furniture was ever contacted from May 1998 to 2006 by anyone from NTN in order to update his user certification signed on May 5, 1998. (Id. 53:6-9).

10.   Under the Subscriber Agreement with NTN, Lamboy Furniture, Inc. was the subscriber.  (Id. 55:3-7).

11.   The Subscriber Agreement contained a certification, initialed by Lamboy "that each request for reports will be based upon a legitimate business need in connection with a business transaction." (See Exhibit B).

12.   The Subscriber Agreement signed by Candelario Lamboy also contained a certification that Lamboy Furniture would not request a tenant report without written authorization from a consumer.  (See Exhibit B).

13.   Lamboy used NTN to get information for both Lamboy Furniture and Lamboy Housing Development.  (Lamboy Dep., 56:3-6).

14.   At the time that Lamboy requested Plaintiff's credit report from NTN, he had nothing in writing from Plaintiff authorizing said request.  (Id. 51:16-19).

15.   It was Mr. Lamboy's understanding that the FCRA required that any credit report obtained from NTN was "between the tenant or the customer and the company [Lamboy Furniture]." (Id. 54:7-11).

16.   Lamboy Furniture did no business with Alicia Hernandez.  (Id. 56:19-21).

17.   Lamboy obtained Plaintiff's credit report from NTN and had no permissible purpose in doing so.  (Id. 46:16-47:8).

18.   Lamboy obtained Plaintiff's credit report at the sole request of Jose Diaz.  (Id. 47:9-13).

19.   Lamboy did nothing to confirm that Jose Diaz had any business relationship with Plaintiff and Diaz had none.  (Id. 47:17-21).

20.     Lamboy acknowledged that he had no legitimate purpose to obtain Plaintiff's credit report on April 18, 2006.  (Id. 58:23-59:8).

21.     Lamboy Furniture likewise had no legitimate business need to obtain Plaintiff's credit report.  (Id. 63:17-24).

22.     At the time that Lamboy requested Plaintiff's credit report from NTN, NTN did not ask why he requested the report.  (Id. 66:15-21).

23.     No one from NTN ever visited Lamboy Furniture's premises to review their policies and procedures with respect to insuring the confidentiality of consumer credit reports.  (Id. 60:17-21).

24.     The date of Plaintiff's credit report obtained by Lamboy Furniture from NTN is April 18, 2006.  (Id. 68:14-24).

25.     Candelario Lamboy sent Plaintiff's credit report to Jose Diaz by mail upon receipt of the report from NTN.  (Id. 70:23-71:2; 72:15-17).

26.     Lamboy admits that he had no permissible purpose to obtain Plaintiff's credit report from NTN.  (Id. 75:19-22).

**B.     Facts Pertaining to NTN**

27.     Abramovitz purchased NTN in 1990.  (Deposition of Lawrence Abramovitz, hereinafter referred to as Abramovitz Dep., 17:24-18:4, a true copy of which is attached hereto as Exhibit "C").

28.     Abramovitz states that he was unaware of any obligation to periodically audit subscribers for conformance with the certifications they were making to NTN in their Subscriber Agreements.  (Id. 21:19-24).

29.     Abramovitz admits that NTN is a credit reporting agency as defined in the Fair Credit Reporting Act.[2]  (Id. 22:9-15).

30.     When asked whether it was his understanding that NTN would completely fulfill its obligations under the FCRA as long as a subscriber signed a Subscription Agreement with NTN, Abramovitz stated "Yes."  (Id. 26:6-10).

31.     When asked what if anything NTN did to insure that a subscriber would have sufficient knowledge of the FCRA to comply with its requirements, Mr. Abramovitz reiterated that he was relying solely upon the certifications contained in the Subscription Agreement.  (Id. 33:1-12).

32.     Abramovitz states that Lamboy Furniture first became a subscriber of NTN on May 5, 1998.  (Id. 34:1-9).

33.     When asked to detail all steps taken by NTN to insure that credit reports sought by Lamboy Furniture and other subscribers were used only for a statutorily permitted purpose, Mr. Abramovitz stated that he relied upon nothing other than the eight year old certification Lamboy submitted on May 5, 1998.  (Id. 43:20-44:13).

34.     Abramovitz states that Lamboy's giving an NTN credit report to a third party was a violation of the Subscriber Agreement.  (Id. 47:1-6).

35.     Abramovitz admits that NTN did not give potential subscribers any training as to what would constitute a legitimate business purpose for requesting a credit report under the FCRA.  (Id. 49:17-20).

36.     When asked "Does NTN do anything to give itself comfort that a potential subscriber knows the requirements under the FCRA?" Abramovitz replied "The Subscription

---

[2]  15 U.S.C. § 1681a(3)(f) defines "consumer reporting agency" as "any person which, for monetary fees . . . regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information . . . for the purpose of furnishing consumer reports to third parties, . . .."

6

Agreement that someone needs to sign with us before they can obtain retail credit data is our comfort." (Id. 50:3-8).

37.     Abramovitz admits that NTN never sent out any authorized agents to inspect any records, documents or the physical premises of Lamboy Furniture, Inc. (Id. 51:8-11).

### III.    LEGAL ARGUMENT

#### A.    Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A dispute of fact is "material" only if it may affect the outcome of the case. Sentry Select Ins. Co. v. LBL Skysystems (U.S.A.), Inc., 486 F. Supp. 2d 496, 506 (citing Sentry Select Ins. Co., 486 F. Supp. 2d at 506; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  For an issue of material fact to be "genuine" within the meaning of Rule 56(c), a reasonable fact-finder must be able to return a verdict in favor of the non-moving party.

Where the evidence with respect to the resolution of a genuine issue of material fact is such that reasonable minds could differ, it is well settled that summary judgment is inappropriate. Anderson, 477 U.S. at 249.  However, it is equally well settled that, "if, under the governing law, there can be but one reasonable conclusion as to the verdict," then summary judgment is appropriate. Id.  Accordingly, where the evidence "is so one-sided that one party must prevail as a matter of law," there is no issue of fact for the jury to resolve, and summary judgment is appropriate. Id. at 251.

> **B.  The Admissions of Candelario Lamboy Establish That Plaintiff is Entitled to Judgment in her Favor as a Matter of Law as to Liability with Respect to Defendants Lamboy and Lamboy Furniture's <u>Negligent Violation of § 1681b(f).</u>**

Section 1681b(f) of the FCRA states, in pertinent part: "A person shall not use or obtain a consumer report for any purpose unless - 1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section [§ 1681b(a)] . . ." Accordingly, a subscriber such as Lamboy Furniture must have a permissible purpose as set forth in § 1681b(a) before it can either obtain or use a consumer credit report. It is undisputed that the April 18, 2006, NTN report pertaining to Plaintiff is a "consumer report" within the meaning of the FCRA.[3]

Section <u>1681o</u> of the FCRA establishes liability for the <u>negligent</u> violation of its provisions as follows:

> Any person who is negligent in failing to comply with any requirement imposed under this sub-chapter with respect to any consumer is liable to that consumer in an amount equal to the sum of -
>
> (1) any actual damages sustained by the consumer as a result of the failure; and
> (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorneys' fees as determined by the court.

15 U.S.C. § 1681o(a). While "negligence" is not defined by the FCRA, the Restatement (Second) of Torts defines negligence as "conduct which falls below the standard established by

---

[3] The term "consumer report" is defined as "any written, oral or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for - (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under § 1681b of this title." Section 1681a(d)(1).

8

law for the protection of others against unreasonable risk of harm." Restatement (Second) of Torts § 282 (1965). Moreover, "reasonable procedures" required under the FCRA have been held to be those procedures that "a reasonably prudent person would [undertake] under the circumstances." Philbin v. Trans Union Corp., 101 F.3d 957, 963 (3d Cir. 1996) (quoting Stewart v. Credit Bureau, Inc., 734 F.2d 47, 51 (D.C. Cir. 1984)).

The deposition testimony of Lamboy makes it perfectly clear that his request for Plaintiff's consumer report from NTN was not an unintentional accident or the result of a clerical error or other such mistake, but rather a volitional act whereby, at the request of Jose Diaz, Lamboy knowingly obtained Plaintiff's report. Lamboy testified, repeatedly, that 1) the only reason he obtained Plaintiff's credit report was at the request of Jose Diaz (Lamboy Dep., 47:9-13), 2) that neither he nor Lamboy Furniture had any business relationship with Plaintiff at the time (id. 56:19-21), and 3) that he had no legitimate business need or permissible purpose to obtain Plaintiff's consumer report (id. 46:16-47:8; 58:23-59:8; 75:19-22). Moreover, Lamboy admitted to an impermissible use of Plaintiff's credit report when he testified that as soon as he received Plaintiff's consumer report he sent it to Jose Diaz.[4] (Id. 70:23-71:2; 72:15-17).

Presented with the above testimony of Lamboy on behalf of Lamboy Furniture, reasonable minds could not fail to conclude that both Lamboy and Lamboy Furniture obtained and used Plaintiff's consumer report in violation of § 1681b(f). It is well settled that a defendant's violation of a statutory obligation constitutes negligence per se. Hawley v. Delaware and Hudson Ry. Co., 514 F. Supp. 2d 650, 655 (M.D. Pa. 2007). "The violation of federal statutes and regulations is commonly given negligence per se effect . . . ." Grable & Sons Metal

---

[4] Although damages are beyond the scope of this Motion, it bears note that Diaz was no innocuous businessman. Diaz harassed Hernandez and became a terrible problem tenant of Plaintiff's who repeatedly stalled and frustrated eviction proceedings, after Diaz breached his lease with Plaintiff Hernandez was justifiably horrified when she found her own credit report in a pile of rubbish that Diaz left behind when he was evicted from the apartment that Hernandez rented to Diaz.

Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 318-19 (2005) (citing Restatement (Third) of Torts § 14)). See also W. Keeton et al., Prosser and Keeton on Law of Torts, 36 (5th ed. 1984) ("[T]he breach of a federal statute may support a negligence per se claim as a matter of state law"). Plaintiff's evidence of Defendants Lamboy and Lamboy Furniture's negligent violation of § 1681b(f) is not disputed on the facts and Plaintiff must prevail on this issue as a matter of law. Accordingly, Plaintiff is entitled to summary judgment in her favor and against Defendants Lamboy and Lamboy Furniture as to liability (only) with respect to their negligent violation of § 1681b(f).

   **C. Because Reasonable Minds Could Not Differ in Concluding that Defendants Lamboy and Lamboy Furniture's Violation of § 1681b(f) was Willful, Plaintiff is Entitled to Summary Judgment in her Favor with Respect to said Defendants' Willful Violation of § 1681b(f).**

Section 1681n of the FCRA provides for liability for the willful non-compliance with its provisions as follows:

> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of -
>
> (1)(A)  any actual damages sustained by the consumer as a result of the failure or damages of not less than $100.00 and not more than $1,000.00; or
> (B)  in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000.00, whichever is greater;
> (2)  such amount of punitive damages as the court may allow; and
> (3)  in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorneys' fees as determined by the court.

15 U.S.C. § 1681n(a).

Like "negligent" conduct pursuant to § 1681o, the term "willfully" as used in § 1681n is not defined in the FCRA. However, recent decisions have identified the nature of the conduct which is considered to be willful under § 1681n. In <u>Safeco Insurance Co. of America v. Burr</u>, 127 S. Ct. 2201 (2007), the United States Supreme Court stated "[w]here willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well." <u>Id.</u> at 2208. Accordingly, the Court in <u>Safeco</u> equated willful conduct with either a knowing violation or "reckless disregard" for the rights of others. <u>Id.</u> The Court went on to establish that "[w]hile the term recklessness is not self-defining, the common law has generally understood it in the sphere of civil liability as conduct violating an objective standard; action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" <u>Id.</u> at 2214, (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 836 (1994)). Pursuant to the Court's holding in <u>Safeco</u>, one who has reason to know of facts which would lead a reasonable person to realize, not only that his conduct would create an unreasonable risk of harm to another, but that said risk of harm is substantially greater than that caused by careless conduct, would be "reckless" and therefore commit a "willful" violation of the FCRA.

The Supreme Court's decision in <u>Safeco</u> has been applied by our Court of Appeals in the context of an FCRA action in <u>Whitfield v. Radian Guaranty, Inc.</u>, 501 F.3d 262, 266 (3d Cir. 2007). In following the Supreme Court's rejection of the position that the use of the term "willfully" in § 1681n limits liability thereunder to knowing violations only, the Third Circuit adopted the reckless disregard standard stated therein. <u>Id.</u> at *3. Accordingly, one who is charged with a willful violation of the FCRA pursuant to § 1681n will be found liable if

11

1) he/she knowingly violated any provision of the Act or, 2) if he/she acted with reckless disregard for the rights of consumers protected under the Act.

Pursuant to his own testimony, as set forth above, Lamboy's obtaining and use of Plaintiff's consumer report was not the result of carelessness or mistake, but rather the result of a conscious compliance with the request of Jose Diaz.  Moreover, Lamboy's giving of Plaintiff's consumer report to Diaz was, again pursuant to Lamboy's own testimony, done with the full knowledge that any such report was "between the tenant or the customer and the company [Lamboy Furniture]." (Lamboy Dep., 54:7-11).  Accordingly, it is clear by Lamboy's own admissions that he had knowledge that what he was doing was wrong, but he did it anyway.  Such conduct, established by the undisputed admissions of the Defendant, can lead to but one reasonable conclusion:  Lamboy and Lamboy Furniture acted either knowingly or in reckless disregard of Plaintiff's consumer protected rights under the FCRA and therefore willfully violated the provisions thereof.

Because, given the admissions of Defendant Lamboy, no reasonable fact-finder could conclude that Defendants Lamboy and Lamboy Furniture did not willfully violate § 1681e(f), Plaintiff is entitled to summary judgment in her favor and against said Defendants, as to liability only, with respect to their willful violation of the FCRA.

> **D.   Given the Admissions of NTN, Plaintiff is Entitled to a Judgment in her Favor, as to Liability Only, with Respect to NTN's Negligent Violation of § 1681e(a).**

Section 1681b(a) of the FCRA states that a consumer reporting agency ("CRA") may furnish a consumer report to another only for the permissible purposes enumerated therein, "and no other." Section 1681e(a) seeks to ensure CRA compliance with § 1681b as follows:

> Every consumer reporting agency shall maintain reasonable procedures designed to avoid violations of § 1681c of this title and to limit the furnishing of consumer reports to the purposes listed under § 1681b of this title. These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. <u>Every consumer reporting agency shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report</u>. No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in § 1681b of this title.

15 U.S.C. § 1681e(a). (Emphasis added).

Pursuant to the express language of § 1681e(a), in addition to obtaining certifications from prospective users that all consumer reports will be sought and/or used only for the permissible purposes listed in § 1681b, every CRA "shall make a reasonable effort to verify" said certifications. That there exists an independent duty to make reasonable efforts to verify subscribers' certifications of permissible use has been confirmed by the Court of Appeals' decision in <u>Pintos v. Pacific Creditors Ass'n</u>, 504 F.3d 792 (9th Cir. 2007), wherein it was held that a CRA had an independent duty to verify a collection agency's certification that a credit report would be used only for a permissible purpose. In so doing, the court held that a CRA cannot rely solely upon a blanket certification on the part of the potential user:

> Section 1681e requires more from a credit reporting agency than merely obtaining a subscriber's general promise to obey the law. After prospective subscribers "certify the purposes for which [credit] information is sought, and certify that the information will be used for no other purpose," the reporting agency must make "a reasonable effort" to verify the certifications .... Under the plain terms of § 1681e(a), a subscriber's certification cannot absolve the reporting agency of its independent obligation to verify the certification and determine that no reasonable grounds exist for suspecting impermissible use.

13

Id. at *5 (quoting 15 U.S.C. § 1681e(a)).  Accordingly, it has been determined as a matter of law that a CRA such as NTN does not conform to the compliance procedures established by § 1681e(a) by simply relying solely upon the certifications of potential users - which is precisely what NTN did, according to the undisputed testimony.  See In re Trans Union, 211 F.R.D. 328 (N.D. Ill. 2002) (holding CRA's disclosure of consumer report "without reasonable procedures ... to ensure that the customer has a proper purpose constitutes a violation of the Act [FCRA]. ... ").

In the instant case, the admissions of Abramovitz establish, beyond any dispute, that when NTN provided Lamboy with Plaintiff's credit report on April 18, 2006, it did so by relying solely upon the certification of Lamboy Furniture, obtained on May 5, 1998, that "each request for reports will be based upon a legitimate business need in connection with a business transaction." (See Exhibit B).  First, Abramovitz concedes that NTN is a CRA within the meaning of the FCRA.  (Abramovitz Dep., 22:9-15).  Second, when asked to detail all steps taken by NTN to insure that credit reports sought by Lamboy Furniture were used only for a statutorily permitted purpose, Abramovitz repeatedly admitted that no such steps were taken as NTN relied solely upon the certification initialed by Lamboy on May 5, 1998.  (Id. 26:6-10; 43:20-44:13; 50:3-8).

That NTN understood it had a duty to periodically verify the certifications obtained from Lamboy is evidenced by the following language in the Subscription Agreement:  "The Federal Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.) and other applicable state laws restrict the purposes for which and under what conditions any person may obtain credit reports or other consumer information from a credit reporting agency. . . .  The undersigned subscriber agrees to allow NTN or its authorized agents to inspect any records, documentation or physical premises

14

to determine compliance with these laws." (See Exhibit B). Yet, when asked whether, in the eight year period from May 5, 1998 to April 18, 2006, NTN had ever sent authorized agents to Lamboy Furniture to verify the certifications first obtained in May of 1998, Abramovitz stated "No." (Id. 51:8-11). However, despite the express language of the Subscription Agreement quoted above, Abramovitz disclaimed knowledge of any obligation to periodically audit subscribers for conformance with the certifications they were making to NTN in their Subscriber Agreements. (Id. 21:19-24). This testimony renders summary judgment as to NTN's <u>willful</u> violation of § 1681e(a) inappropriate, as a reasonable fact-finder might conclude that NTN's conduct was neither knowing nor reckless. However, the same cannot be said with respect to NTN's <u>negligent</u> violation of § 1681e(a).

Given the express language of § 1681e(a) requiring that CRAs make "a reasonable effort to verify" the certifications obtained from its subscribers with respect to the acquisition and use of consumer reports for permissible purposes only, and given Abramovitz's repeated admissions that no efforts were made by NTN during an eight year period to either update or otherwise verify Lamboy's certifications contained in the Subscription Agreement, no reasonable fact-finder could conclude that NTN did not negligently violate its obligations pursuant to § 1681e(a). Contrary to the clear and unambiguous language of § 1681e(a) and the Court's holdings in <u>Pintos</u> and <u>In re Trans Union</u>, Abramovitz repeatedly admitted that NTN relied <u>solely</u> upon the blanket certifications provided to it by Lamboy on May 5, 1998. These admissions establish, as a matter of law, that Plaintiff is entitled to a judgment in her favor and against NTN, as to liability only, with respect to NTN's negligent violation of § 1681e(a).

Because the evidence of NTN's negligent violation of § 1681e(a) is "so one-sided that one party [Plaintiff] must prevail as a matter of law," <u>Anderson</u>, 477 U.S. at 252, Plaintiff is

entitled to summary judgment as to liability only with respect to NTN's negligent violation of § 1681e(a).

## IV.  CONCLUSION

For all of the reasons set forth above, Plaintiff is entitled to summary judgment in her favor under 15 U.S.C. § 1681n, o, and against Defendants Candelario Lamboy and Lamboy Furniture, Inc. with respect to both their negligent and willful violation of 15 U.S.C. § 1681b. Plaintiff is also entitled to summary judgment as to liability only against Defendant National Tenant Network for its negligent violation of 15 U.S.C. § 1681e(a).

                                        Respectfully submitted,

Date:   12/12/07                                         */s/ Frank Schwartz*
                                                                             CARY L. FLITTER
                                                                              FRANK SCHWARTZ
                                                                              Attorneys for Plaintiff

                                                                              LUNDY, FLITTER,
                                                                              BELDECOS & BERGER, P.C.
                                                                              450 N. Narberth Avenue
                                                                              Narberth, PA 19072
                                                                              (610) 822-0782

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALICIA HERNANDEZ,<br>             Plaintiff,<br>vs.<br><br>LAMBOY FURNITURE, INC.,<br>        and<br>LAMBOY HOUSING DEVELOPMENT CO.,<br>        and<br>NATIONAL TENANT NETWORK,<br>        and<br>CANDELARIO LAMBOY,<br>             Defendants. | CIVIL ACTION<br><br><br><br>NO. 07-CV-0240(JD) |

## CERTIFICATE OF SERVICE

I, FRANK SCHWARTZ, ESQUIRE, do hereby certify that Plaintiff's Motion for Summary Judgment as to Liability Only has been electronically filed with the Clerk of Court using the CM/ECF system, which sent notification of such filing to:

Richard Perr, Esquire
Fineman, Krekstein & Harris
United Plaza, Suite 1800
30 South 17th Street
Philadelphia, PA  19103

Said document is available for viewing and downloading from the ECF system.

LUNDY, FLITTER, BELDECOS &
BERGER, P.C.


Dated:    12/12/07              */s/  Frank Schwartz*
                                CARY L. FLITTER
                                FRANK SCHWARTZ
                                Attorneys for Plaintiff
                                Alicia Hernandez
                                LUNDY, FLITTER,
                                BELDECOS & BERGER, P.C.
                                450 N. Narberth Avenue
                                Narberth, PA 19072
                                (610) 822-0782