IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALICIA HERNANDEZ** | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| vs. | : | NO. 07-00240 |
| | : | |
| **LAMBOY FURNITURE, INC., LAMBOY** | : | |
| **HOUSING DEVELOPMENT CO.,** | : | |
| **NATIONAL TENANT NETWORK, and** | : | |
| **CANDELARIO LAMBOY** | : | |
| Defendants. | : | |

### ORDER & MEMORANDUM

### ORDER

**AND NOW**, this 27th day of August, 2008, upon consideration of Plaintiff's Motion for Summary Judgment as to Liability Only (Document No. 22, filed December 12, 2007, 2007); Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment as to Liability Only (Document No. 26, filed January 14, 2008); Plaintiff's Reply to Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment as to Liability Only (Document No. 29, filed January 30, 2008); Plaintiff's Motion to Disqualify Richard J. Perr and His Firm as Counsel for Defendant National Tenant Network (Document No. 31, filed April 10, 2008); the Response of Defendants Lamboy Furniture, Inc., Lamboy Housing Development Co., National Tenant Network and Candelario Lamboy to Plaintiff's Motion to Disqualify Richard J. Perr and His Firm as Counsel for Defendant National Tenant Network (Document No. 32, filed April 23, 2008); and Plaintiff's Reply to Defendants Lamboy and NTN's Opposition to Plaintiff's Motion to Disqualify Perr as Counsel for NTN (Document No. 33, filed April 30, 2008), for the reasons set forth in the attached Memorandum, **IT IS ORDERED** as follows:

1. Plaintiff Alicia Hernandez's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART** as follows:

    (a) To the extent Plaintiff's Motion for Summary Judgment seeks a determination that defendants Candelario Lamboy and Lamboy Furniture, Inc. obtained plaintiff's credit report for a reason not permitted by 15 U.S.C. § 1681b, the motion is **GRANTED**;

    (b) To the extent Plaintiff's Motion for Summary Judgment seeks judgment in her favor as to liability against defendants Candelario Lamboy and Lamboy Furniture, Inc. for negligent violation of 15 U.S.C. § 1681b, pursuant to 15 U.S.C. § 1681o, the motion is **DENIED**;

    (c) To the extent Plaintiff's Motion for Summary Judgment seeks judgment in her favor as to liability against defendants Candelario Lamboy and Lamboy Furniture, Inc. for willful violation of 15 U.S.C. § 1681b, pursuant to 15 U.S.C. § 1681n, the motion is **DENIED**; and

    (d) To the extent Plaintiff's Motion for Summary Judgment seeks judgment in her favor as to liability against defendant National Tenant Network for negligent violation of 15 U.S.C. § 1681e(a), the motion is **DENIED**;

2. Defendants Lamboy Furniture, Inc., Lamboy Housing Development Co., National Tenant Network, and Candelario Lamboy's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment as to Liability Only, to the extent it seeks judgment in favor of defendant National Tenant Network and against plaintiff on Count III of the Complaint, and thus is considered by the Court as a Motion for Summary Judgment as to

Count III of the Complaint,[1] is **GRANTED**; and

3. Plaintiff's Motion to Disqualify Richard J. Perr and His Firm as Counsel for Defendant National Tenant Network is **DENIED AS MOOT**.

## **MEMORANDUM**

**I.     BACKGROUND**

    **A.     Factual Background**

This case arises from defendant Candelario Lamboy's April 18, 2006 request for plaintiff's credit report from defendant National Tenant Network. (Deposition of Candelario Lamboy 68 ("Lamboy Dep.")). Defendant Lamboy is the president and principal shareholder of defendants Lamboy Furniture, Inc. ("Lamboy Furniture") and Lamboy Housing Development Company ("Lamboy Housing"). (Id. 19-21.) Both Lamboy Furniture, a retail furniture business, and Lamboy Housing own properties which they lease to commercial and/or residential tenants. (Id. 13, 34-35.)

Lamboy requested and obtained plaintiff's credit report pursuant to a Subscription Agreement that Lamboy Furniture maintained with defendant National Tenant Network ("NTN"). (Id. 68; Ex. B to Pl.'s Mot. for Summ. J.) NTN is a "resident screening company for landlords, apartment complexes, management companies, [and] housing authorities," (Deposition of Lawrence Abramovitz 22 ("Abramovitz Dep.")), and is a consumer reporting

---

[1] Defendants state in their Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment as to Liability Only that, "with respect to Plaintiff's independent claim against NTN, summary judgment is warranted in favor of NTN and against Plaintiff." (Mem. of Law in Opp'n at 1.) The Court construes this statement as seeking summary judgment in NTN's favor on Count III of the Complaint and, with respect to NTN, considers defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment as to Liability Only as a Cross-Motion for Summary Judgment.

agency as defined in the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.

Lamboy Furniture entered into its Subscription Agreement with NTN on May 5, 1998. (Id. 52; Ex. B to Pl.'s Mot. for Summ. J.) Pursuant to this Subscription Agreement, Lamboy Furniture could obtain credit reports and tenant reports upon request from NTN. (Lamboy Dep. 58; Ex. B to Pl.'s Mot. for Summ. J.; Abramovitz Dep. 22). In order to obtain the Subscription Agreement, Candelario Lamboy, as President of Lamboy Furniture, had to certify that (1) Lamboy Furniture is "the owner/agent of an owner of rental property"; (2) "each request for [credit] reports will be based upon a legitimate business need in connection with a business transaction"; (3) "the information will be used for no other purpose"; and (4) "written authorization will be obtained from the applicant prior to initiating any credit investigation." (Ex. B to Pl.'s Mot. for Summ. J.) The Subscription Agreement also explained that:

> The Federal Fair Credit Reporting Act (15 U.S.C. [§] 1681 et seq) and other applicable state laws restrict the purposes for which and under what conditions any person may obtain credit reports or other consumer information from a credit reporting agency. These laws control the confidentiality of credit information and under what circumstances it may be disclosed.

(Id.) Finally, the Subscription Agreement provided that "[u]se of NTN services by the undersigned subscriber indicates an understanding of and compliance with the above" certifications and conditions of use. (Id.) The rental properties listed on the Subscription Agreement signed by Candelario Lamboy, as president of Lamboy Furniture, as the subject of the Subscription Agreement were 2846 North Fifth Street [in Philadelphia, Pennsylvania] and 918 Broadway in Camden, New Jersey. (Id.)

Defendant NTN is owned by Lawrence Abramovitz. (Abramovitz Dep. 26.) Abramovitz testified that completing a Subscription Agreement did not automatically enable a potential

4

subscriber to obtain credit and tenant reports from NTN.  (Id. 36.)  Instead, NTN first performed a "tax record check" to verify that an applicant for a Subscription Agreement owned the property in relation to which he would seek to obtain credit and tenant reports under the Subscription Agreement.  (Id. 36-37.)  Abramovitz testified that a tax record check was run on Lamboy Furniture in May 1998 to verify its ownership of the properties listed on the Subscription Agreement signed and submitted by Candelario Lamboy.  (Id. at 36-37, 39.)  After the initial verification was completed, NTN took no further steps "to see to it that consumer reports sought by Lamboy . . . [were] sought and used only for a statutory permissible purpose."  (Id. 43.)  Instead, NTN relied solely upon the contractual certification in the May 5, 1998 Subscription Agreement that "each request for [credit] reports will be based upon a legitimate business need in connection with a business transaction" and "the information will be used for no other purpose." (Id. 44; Ex. B to Pl.'s Mot. for Summ. J.)

Candelario Lamboy testified that he obtained plaintiff's credit report "at the request of Jose Diaz, who claimed that plaintiff was a customer for whom he was trying to determine credit worthiness."  (Lamboy Dep. 46.)  Lamboy knew Jose Diaz because Diaz had previously rented commercial space from Lamboy Housing for his wholesale and retail business.  (Id. 24-25.)  Diaz was no longer a Lamboy Housing tenant at the time of the credit report request in April 2006. (Id. 29.)  Diaz was never an agent or employee of Lamboy Furniture or Lamboy Housing.  (Id. 29-30.)

In explaining why he obtained plaintiff's credit report for Diaz, Lamboy testified that Diaz told him "that he had authority to obtain the report," saying "that he [did] business with the lady."  (Id. 46-47.)  Lamboy did not take any steps to verify Diaz's assertions, nor did he have a

5

written authorization signed by plaintiff permitting Diaz to obtain her credit report. (Id. 47, 51.) However, Lamboy "believed he had a permissible purpose" in obtaining plaintiff's credit report based on Diaz's assertions. (Id. 51.) On that issue, Lamboy explained that although he believed a credit report obtained by Lamboy Furniture was "between the tenant or the customer and the company" only, he gave the credit report to Diaz, who had no connection to Lamboy Furniture, because "it [confidentiality] never came to my mind except that he said that he was doing business with the lady and he asked me for some information." (Id. 54.)

Lamboy admitted that plaintiff was not doing business with Lamboy Furniture or Lamboy Housing, nor did she have any credit transactions with, apply for employment with, seek to become a tenant of, or seek to purchase any insurance from either Lamboy Furniture or Lamboy Housing. (Id. 56, 62-63.) He also admitted that neither Lamboy Furniture nor Lamboy Housing had "any other legitimate business need which was initiated by [plaintiff] to obtain her credit report." (Id. 63.) More generally, Lamboy testified that Lamboy Furniture had "no purpose" for which to request the report. (Id. 75.)

When asked about his knowledge of the FCRA, Lamboy admitted that he did not have an understanding of the "legal requirements necessary to obtain a consumer's credit report" until after plaintiff brought the pending lawsuit against him and that he "never read" the Subscription Agreement which would have alerted him to the fact that the FCRA "restrict[s] the purposes for which and under what conditions any person may obtain credit reports or other consumer information from a credit reporting agency." (Id. 18, 53; Ex. B to Pl.'s Mot. for Summ. J.) Lamboy also testified that he did not know at the time that he obtained the report for Diaz that a Social Security number is confidential identifying information. (Lamboy Dep. 70.)

Plaintiff testified that she knew Jose Diaz because he rented an apartment in a house owned by her godmother. (Pl.'s Dep. 14.) Diaz was still a tenant when plaintiff acquired the property in 2005. (Id. 16.) Plaintiff described Diaz as a problem tenant who she was trying to evict, and eventually did evict, for failure to pay rent and for threatening her godmother and herself. (Id. 16-22.) Upon recovering physical possession of the property once rented by Diaz, plaintiff cleaned out the house and found her credit report in a stack of papers left behind by Diaz. (Id. 24.)

Plaintiff filed the instant lawsuit after finding a copy of her credit report in her property which Diaz had rented. The credit report contained confidential information about plaintiff, including her social security number and personal credit information. (Lamboy Dep. 69; Abramovitz Dep. 53.) Plaintiff cannot identify a specific instance of "something that has happened with [her] credit report" and she is not "specifically aware of anyone other than Jose Diaz that had or looked at [her] credit report." (Pl.'s Dep. 26, 29.) However, she testified that she "still feel[s] scared" about not knowing that her identity and credit are protected. (Id. 26-27.)

### B. Procedural History

#### 1. Complaint

On January 18, 2007, plaintiff filed a Complaint against defendants based upon Candelario Lamboy's obtaining plaintiff's credit report from NTN for the purpose of giving the report to Jose Diaz. On December 3, 2007, plaintiff filed an Amended Complaint. The Amended Complaint includes three counts.

In Count I, plaintiff asserts a claim under the FCRA against defendants Lamboy Furniture, Inc. and Lamboy Housing Development Company. Plaintiff alleges that Lamboy Furniture and Lamboy Housing "jointly and/or severally violated the Fair Credit Reporting Act

by willfully and/or negligently failing to comply with the requirements imposed under 15 U.S.C. § 1681b, for obtaining or providing a consumer report, including obtaining a consumer report under false pretenses." (Am. Compl. ¶ 32.) Plaintiff further alleges that Lamboy Furniture and Lamboy Housing "jointly and/or severally violated the Fair Credit Reporting Act by willfully and/or negligently reporting or obtaining credit information about plaintiff" in violation of 15 U.S.C. § 1681n and 15 U.S.C. § 1681o. (Id. ¶ 33.)

In Count II, plaintiff asserts a claim under the FCRA against defendant Candelario Lamboy. Plaintiff alleges that Lamboy "willfully and/or negligently failed to comply with the requirements imposed under 15 U.S.C. § 1681b, for obtaining or providing a consumer report, including obtaining a report under false pretenses." (Id. ¶ 35.) Plaintiff also alleges that Lamboy "violated the Fair Credit Reporting Act by willfully and/or negligently reporting or obtaining credit information about plaintiff" in violation of 15 U.S.C. § 1681n and 15 U.S.C. § 1681o. (Id. ¶ 36.)

Finally, in Count III, plaintiff asserts a claim under the FCRA against defendant National Tenant Network. Plaintiff alleges that NTN "violated the Fair Credit Reporting Act by willfully and/or negligently failing to comply with the requirements imposed under 15 U.S.C. § 1681b, for obtaining or providing a consumer report." (Id. ¶ 38.) Plaintiff also avers that NTN "willfully and/or negligently fail[ed] to comply with the requirements imposed under 15 U.S.C. § 1681e(a) for verifying the identity and/or permissible purposes of credit users." (Id. ¶ 39.) Finally, plaintiff claims that NTN "violated the Fair Credit Reporting Act by willfully and/or negligently reporting or obtaining credit information about plaintiff" in violation of 15 U.S.C. § 1681n and 15 U.S.C. § 1681o. (Id. ¶ 40.)

> **2.    Plaintiff's Motion for Summary Judgment as to Liability Only ("Plaintiff's Motion for Summary Judgment")**

In her Motion for Summary Judgment as to Liability Only, plaintiff first seeks judgment in her favor on Counts I and II, as to liability only, with respect to defendants Lamboy and Lamboy Furniture's negligent and willful violation of [15 U.S.C.] § 1681b(f). (Pl.'s Mot. for Summ. J. 8, 10.)  Plaintiff also seeks "judgment in her favor, as to liability only, with respect to NTN's negligent violation of [15 U.S.C.] § 1681e(a)." (Id. 12.)  The parties' arguments on the motion for summary judgment will be set forth in Part III below to the extent necessary to explain the Court's ruling.

> **3.    Plaintiff's Motion to Disqualify Richard J. Perr and His Firm as Counsel for Defendant National Tenant Network ("Motion to Disqualify")**

In her Motion to Disqualify, plaintiff asks the Court to disqualify Richard Perr and his firm from representing defendant National Tenant Network.  In support of this request, plaintiff asserts that NTN and the "Lamboy defendants" (Candelario Lamboy, Lamboy Furniture, Inc., and Lamboy Housing Development Co.) have "competing interests in this litigation" and thus, "Perr cannot fully represent one Defendant without compromising the other, including the prospect of settlement." (Mot. to Disqualify 1.)  Because the Court grants judgment in favor of NTN on Count III of the Complaint, the only count of the Complaint which asserts a claim against NTN, plaintiff's motion to disqualify is denied as moot.

## II.    STANDARD OF REVIEW

A court should grant summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A "genuine" issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" when it "might affect the outcome of the suit under the governing law." Id.  In considering a motion for summary judgment, the "facts must be viewed in the light most favorable to the party opposing summary judgment." Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990).  The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations, or suspicions" to support its claim.  Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).

### III. DISCUSSION

#### A. Plaintiff's Motion for Summary Judgment

##### 1. Candelario Lamboy and Lamboy Furniture, Inc.'s Violation of 15 U.S.C. § 1681b(f)

15 U.S.C. § 1681b(f) provides that a "person shall not use or obtain a consumer report for any purpose unless – (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification."

Plaintiff argues that defendants Candelario Lamboy and Lamboy Furniture violated 15 U.S.C. § 1681b(f) when Candelario Lamboy, as president of Lamboy Furniture and acting pursuant to the Subscription Agreement issued to Lamboy Furniture by NTN, obtained plaintiff's credit report without a permissible purpose under 15 U.S.C. § 1681b(a).  (Pl.'s Mot. for Summ. J.

9.) Specifically, plaintiff points out that Lamboy testified that "(1) the only reason he obtained Plaintiff's credit report was at the request of Jose Diaz, (2) that neither he nor Lamboy Furniture had any business relationship with Plaintiff at the time, and (3) that he had no legitimate business need or permissible purpose to obtain Plaintiff's credit report." (Id. (citing Lamboy Dep. 46-47, 56, 58-59, 75) (emphasis original)). "Moreover," plaintiff argues, "Lamboy admitted to an impermissible use of Plaintiff's credit report when he testified that as soon as he received Plaintiff's consumer report he sent it to Jose Diaz." (Pl.'s Mot. for Summ. J. 9 (citing Lamboy Dep. 70, 72)).

In their Memorandum of Law in Opposition to plaintiff's Motion for Summary Judgment, defendants argue that there are genuine issues of material fact as to whether Lamboy and Lamboy Furniture violated 15 U.S.C. § 1681b in obtaining plaintiff's credit report because it "appeared to Lamboy that Diaz had a legitimate business need to acquire Plaintiff's report." (Defs.' Mem. of Law in Opp'n 1, 8-12.) The Court rejects this contention and concludes that the FCRA does not permit certified credit users to provide credit reports to third parties in the absence of a legitimate business need of the certified credit user and there is no evidence of such a business need in this case.

15 U.S.C. § 1681b(f)(2) specifically provides that a "person shall not use or obtain a consumer report for any purpose unless . . . the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification." Lamboy Furniture was a certified credit user with NTN, having entered a Subscription Agreement certifying that it would obtain and use credit reports from NTN for "a legitimate business need in connection with a business transaction." (Ex. B to Pl.'s Mot. for Summ. J.)

11

However, this certification only covered Lamboy Furniture's business transactions. Plaintiff stated in her Reply to Defendants' Memorandum of Law in Opposition that if defendants' argument that a credit user like Lamboy Furniture could obtain and distribute credit reports to third parties that it believed to have a legitimate business need for the report is accepted, "there would be no need for more than a single business entity to contract with a [consumer reporting agency] to provide consumer credit reports. . . . This is an absurd result which is not statutorily protected." (Pl.'s Reply 2.) The Court agrees with plaintiff on this issue. When Candelario Lamboy, as president of Lamboy Furniture and acting pursuant to the Subscription Agreement issued to Lamboy Furniture by NTN, obtained plaintiff's credit report, admittedly without a permissible purpose tied to his own business, Lamboy and Lamboy Furniture violated 15 U.S.C. § 1681b. (Lamboy Dep. 56, 62-63, 75.)

Defendants try to avoid this determination by arguing that 15 U.S.C § 1681b(a)(3)(A) and (F) permit a consumer reporting agency to furnish a consumer report to a person:

> [W]hich it has reason to believe . . . intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or . . . otherwise has a legitimate business need for the information . . . in connection with a business transaction that is initiated by the consumer.

However, those provisions cover the providing of a credit report to an individual by a "consumer reporting agency," not the providing of a credit report to a third party by an individual credit user. 15 U.S.C. § 1681b. As stated by the Seventh Circuit in Stergiopoulos v. First Midwest Bancorp, Inc., "[a]n entity may rely on subparagraph (3)(A) [in providing a credit report to a third party] only if the consumer initiates the transaction. A third party cannot troll for reports, nor can it

request a report on a whim." 427 F.3d 1043, 1047 (7th Cir. 2005).  Because, as admitted in Lamboy's deposition, plaintiff never initiated a business transaction with Lamboy or Lamboy Furniture, defendants cannot rely on 15 U.S.C. § 1681b(a)(3)(A) to justify the obtaining of plaintiff's credit report from NTN for use by a third party, Jose Diaz.  (Lamboy Dep. 56, 62-63.)

### 2. Candelario Lamboy and Lamboy Furniture, Inc.'s Negligent Violation of 15 U.S.C. § 1681b(f)

Having determined that defendants Lamboy and Lamboy Furniture violated 15 U.S.C. § 1681b(f), the Court must next decide if these defendants were "negligent in failing to comply" with the requirements of § 1681b such as to be civilly liable to plaintiff under 15 U.S.C. § 1681o. 15 U.S.C. § 1681o provides that "[a]ny person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer" for "actual damages sustained by the consumer as a result of the failure."  The Fair Credit Reporting Act does not define negligence and the Court found only one case which defines negligence in the context of an FCRA case involving the obtaining of a credit report for an impermissible purpose in violation of 15 U.S.C. § 1681b.  In examining a claim of negligent noncompliance with that provision, pursuant to 15 U.S.C. § 1681o, the United States District Court for the Northern District of Illinois stated that the word "negligent," as found in § 1681o, "is accorded its ordinary meaning - 'a failure to exercise reasonable care.'" Miller v. Trans Union, LLC, 2007 WL 641559, at *4 (N.D. Ill. Feb. 28, 2007) (citing Crabill v. Trans Union, LLC, 259 F.3d 662, 664 (7th Cir. 2001)).  This Court adopts that definition in this case.

In explaining why he obtained plaintiff's credit report for Diaz, Lamboy testified that Diaz told him "that he had authority to obtain the report," saying "that he [did] business with the

lady." (Lamboy Dep. 46-47.)   Lamboy took no steps to verify Diaz's assertions, nor did he have a written authorization signed by plaintiff permitting Diaz to obtain her credit report. (Id. 47, 51.  However, Lamboy testified that he "believed he had a permissible purpose" in obtaining plaintiff's credit report based on Diaz's assertions. (Id. 51.))  Lamboy also testified that although he believed a credit report obtained by Lamboy Furniture was "between the tenant or the customer and the company" only, he gave the credit report to Diaz, who had no connection to Lamboy Furniture, because "it [confidentiality] never came to my mind except that he said that he was doing business with the lady and he asked me for some information." (Id. 54.)  When asked about his knowledge of the FCRA, Lamboy admitted that he did not have an understanding of the "legal requirements necessary to obtain a consumer's credit report" until after plaintiff brought the pending lawsuit against him and that he "never read" the Subscription Agreement which would have alerted him to the fact that the FCRA "restrict[s] the purposes for which and under what conditions any person may obtain credit reports or other consumer information from a credit reporting agency." (Id. 18, 53; Ex. B to Pl.'s Mot. for Summ. J.)

These statements by Candelario Lamboy raise a genuine issue of material fact as to whether defendants Lamboy and Lamboy Furniture failed "to exercise reasonable care" with respect to obtaining and disseminating plaintiff's credit report.  Miller, 2007 WL 641559, at *4.  On this issue, the Third Circuit has held that "a court should be reluctant to grant a motion for summary judgment when resolution of the dispositive issue requires a determination of state of mind, for in such cases much depends upon the credibility of witnesses testifying as to their own states of mind, and assessing credibility is a delicate matter best left to the fact finder." Norfolk Southern Ry. Co. v. Basell USA Inc., 512 F.3d 86, 96 (3d Cir. 2008) (citing Metzger v. Osbeck,

841 F.2d 518, 521 (3d Cir. 1988) (internal quotation marks omitted)).  In light of the Third Circuit's admonition in Norfolk Southern, and because "reasonable minds could differ" as to whether defendants Lamboy and Lamboy Furniture's violation of 15 U.S.C. § 1681b was negligent, the Court concludes that the determination of this issue is "best left to the fact finder." Norfolk Southern Ry. Co., 512 F.3d at 96; see also Thibodeaux v. Rupers, 196 F. Supp. 2d 585, 592-93 (S.D. Ohio 2001) (finding violation of 15 U.S.C. § 1681b, but declining to decide whether violation was negligent or willful as a matter of law).  Accordingly, plaintiff's Motion for Summary Judgment as to Liability Only, to the extent that it seeks an order declaring that defendants Lamboy and Lamboy Furniture's violation of 15 U.S.C. § 1681b was negligent, is denied.

### 3. Candelario Lamboy and Lamboy Furniture, Inc.'s Willful Violation of 15 U.S.C. § 1681b(f)

15 U.S.C. § 1681n provides that any "person who willfully fails to comply with any requirement under this subchapter with respect to any consumer is liable to that consumer" for actual and punitive damages.  As stated by the Supreme Court in Safeco Ins. Co. of America v. GEICO General Ins. Co., 127 S.Ct. 2201, 2208-09 (2007), the phrase "willfully fails to comply" in § 1681n(a) reaches both knowing and reckless violations of the FCRA.  The Supreme Court further explains that "a company subject to the FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."  Id. at 2215.

As stated in Part III(A)(2) above, the Court concludes that Candelario Lamboy's

deposition testimony regarding the circumstances of his obtaining of plaintiff's credit report for the purpose of giving it to Jose Diaz create a genuine issue of material fact as to whether defendants Candelario Lamboy and Lamboy Furniture acted negligently in violating 15 U.S.C. § 1681b. These statements likewise create a genuine issue of material fact as to whether defendants Candelario Lamboy and Lamboy Furniture's violation of 15 U.S.C. § 1681b was willful as defined by the Supreme Court in Safeco. Furthermore, as stated by the Third Circuit in Norfolk Southern, this question of Lamboy's state of mind is "best left to the fact finder." 512 F.3d at 96. Thus, plaintiff's motion for summary judgment as to Lamboy and Lamboy Furniture's willful violation of 15 U.S.C. § 1681b is denied.

### 4. National Tenant Network's Negligent Violation of 15 U.S.C. § 1681e(a)

Section 1681b(a) of the FCRA states that a consumer reporting agency may furnish a consumer report to another only for the permissible purposes enumerated in § 1681, "and no other." Section 1681e(a) seeks to ensure that consumer reporting agencies comply with § 1681b by mandating:

> Every consumer reporting agency shall maintain reasonable procedures designed . . . to limit the furnishing of consumer reports to the purposes listed under section 1681b of this title. These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purposes. Every consumer reporting agency shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report. No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b of this title.

Plaintiff argues that the "express language of § 1681e(a)" required NTN to do more than just obtain Lamboy Furniture's certification that a credit report it received from NTN "would be

used only for a permissible purpose." (Pl.'s Mot. for Summ. J. 13.)  Specifically, plaintiff argues that NTN had a duty to "periodically verify the certifications obtained from Lamboy" and that the admissions of Lawrence Abramovitz, president of NTN, that "no efforts were made by NTN during an eight year period to either update or otherwise verify Lamboy's certifications contained in the Subscription Agreement" show a failure to comply with this duty.  (Id. 14-15.)  Thus, it is plaintiff's position that "no reasonable fact-finder could conclude that NTN did not negligently violate its obligations pursuant to § 1681e(a)."  (Id. 15.)

The Court rejects plaintiff's argument that NTN's failure to "update or otherwise verify Lamboy's certifications contained in the Subscription Agreement" constituted a negligent violation of 15 U.S.C. § 1681e(a).  (Pl.'s Mot. for Summ. J. 15.)  Under § 1681e(a), NTN, as a consumer reporting agency, had a duty to obtain certifications from Lamboy Furniture, as a prospective user of its services, that Lamboy Furniture would use credit information provided to it by NTN only for permissible purposes under § 1681b and to verify Lamboy Furniture's identity.  15 U.S.C. § 1681e(a).  NTN fulfilled this duty by having Candelario Lamboy, as president of Lamboy Furniture, sign the Subscription Agreement containing those certifications on May 5, 1998, and by conducting a tax record check to verify that Lamboy Furniture owned the properties for which it sought a subscription.  (Abramovitz Dep. 36-37, 39; Ex. B to Pl.'s Mot. for Summ. J.)

While plaintiff argues that receiving and relying upon this "blanket certification" from Lamboy Furniture was not sufficient to fulfill NTN's obligation under § 1681e(a) to verify that Lamboy Furniture requested her credit report for a permissible purpose under § 1681b, "before ruling that a blanket certification is insufficient, courts consistently require evidence that the

consumer credit reporting agency should have known that the report was requested for an impermissible purpose." Enoch v. Dahle/Meyer Imports, L.L.C., 2007 WL 4106264, at *5 (D. Utah Nov. 16, 2007) (citing Davis v. Asset Servs., 46 F. Supp. 2d 503, 508 (M.D. La. 1998); Boothe v. TRW Credit Data, 557 F. Supp. 66, 71 (S.D.N.Y. 1982); Pintos v. Pacific Creditors Ass'n, 504 F.3d 792, 800 n.6 (9th Cir. 2007)). In Boothe, the district court explained its reasoning as follows:

> Given the high volume of credit requests that TRW must respond to each day, and the importance of a speedy response, the court concludes that it would be impractical to require TRW to verify the purpose for each credit report. By requiring its subscribers to certify the purpose for reports in advance, TRW reasonably strikes a balance between the conflicting goals of protecting the privacy rights of consumers and promoting an efficient credit economy. At least in the context of this case, where Fidelifacts is primarily in the business of requesting reports for proper purposes (employment) and there was no showing that TRW knew of the improper purpose for the report issued as to plaintiff, the court concludes that TRW's release of plaintiff's report was not in violation of the Act. In short, Fidelifacts' primary business purpose and its certification to TRW constituted sufficient "reason to believe" on the part of TRW that Fidelifacts had a legitimate business need for the report requested.

Boothe, 557 F. Supp. at 71. Similarly, in Davis, because the plaintiff did not produce any evidence to prove that the consumer reporting agency "knew or should have had reason to know" that a subscriber "would access the report for an impermissible purpose," the court held that the consumer reporting agency was entitled to judgment as a matter of law on a claim that it violated 15 U.S.C. § 1681e(a). 46 F. Supp. 2d at 508.

In this case, as in Boothe and Davis, plaintiff has failed to produce any evidence that NTN "knew or should have had reason to know" that Lamboy Furniture was requesting plaintiff's credit report for an impermissible purpose. Davis, 46 F. Supp. 2d at 508. Like Fidelifacts in Boothe, Lamboy Furniture is "primarily in the business of requesting reports for

18

proper purposes," namely, making credit determinations and evaluating prospective tenants. (Lamboy Dep. 19, 33; 15 U.S.C. § 1681b; <u>Boothe</u>, 557 F. Supp. at 71)).  Thus, in light of Lamboy Furniture's certifications in the Subscription Agreement and in the absence of any evidence that NTN "knew or should have had reason to know" that Lamboy Furniture was requesting plaintiff's credit report for an impermissible purpose, the Court grants defendants' Cross Motion for Summary Judgment as to Count III of the Complaint against NTN.  <u>Davis</u>, 46 F. Supp. 2d at 508.

   **B.** <u>**Plaintiff's Motion to Disqualify**</u>

  In her Motion to Disqualify, plaintiff asks the Court to disqualify Richard Perr and his firm from representing defendant National Tenant Network.  In support of this request, plaintiff asserts that NTN and the Lamboy defendants have "competing interests in this litigation" and thus, "Perr cannot fully represent one Defendant without compromising the other, including the prospect of settlement."  (Mot. to Disqualify 1.)  Because the Court grants defendants' Cross Motion for Summary Judgment as to Count III of the Complaint, the only count of the Complaint which asserts a claim against NTN, plaintiff's motion to disqualify Richard Perr is denied as moot.

**IV.** **CONCLUSION**

  For the foregoing reasons, the Court concludes that (1) defendants Candelario Lamboy and Lamboy Furniture, Inc. obtained plaintiff's credit report for a reason not permitted by 15 U.S.C. § 1681b, and plaintiff is entitled to summary judgment on that issue; (2)  plaintiff is not entitled to summary judgment as to liability against defendants Candelario Lamboy and Lamboy Furniture, Inc. for negligent violation of 15 U.S.C. § 1681b under 15 U.S.C. § 1681o; (3)

plaintiff is not entitled to summary judgment as to liability against defendants Candelario Lamboy and Lamboy Furniture, Inc. for willful violation of 15 U.S.C. § 1681b under 15 U.S.C. § 1681n; and (4) defendant National Tenant Network is entitled to summary judgment against plaintiff as to Count III of the Complaint.  Because the Court grants summary judgment in favor of defendant NTN on Count III of the Complaint, the only count of the Complaint which asserts a claim against NTN, Plaintiff's Motion to Disqualify Richard J. Perr and His Firm as Counsel for Defendant National Tenant Network is denied as moot.

**BY THE COURT:**

                /s/ **JAN E. DUBOIS, J.**
                **JAN E. DUBOIS, J.**